IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

NOV 1 5 2010

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

ADAM J. CIRALSKY,                        )
                                         )
        Plaintiff,                       )
                                         )
v.                                       )     1:10cv911  (LMB/JFA)
                                         )
CENTRAL INTELLIGENCE AGENCY,             )
     et. al.,                            )
                                         )
        Defendants.                      )
                                         )
                                         )

## MEMORANDUM OPINION

Before the Court is defendants' Motion to Dismiss.  For the
reasons stated in open court and in this opinion, the Motion to
Dismiss will be granted as to all claims.

## I. Background

Plaintiff Adam J. Ciralsky filed this civil action against
his former employer, the Central Intelligence Agency ["CIA"], and
eight current and former CIA and Federal Bureau of Investigations
officials a decade ago in the United States District Court for
the District of Columbia, alleging numerous statutory and
constitutional violations surrounding the revocation of his
security clearance and subsequent termination from his position
as an attorney advisor for the CIA.  Ciralsky claims that the CIA
revoked his security clearance because he is Jewish and was
viewed as a supporter of Israel.  After dismissing some of the
claims earlier this year, the District of Columbia court found
that venue was improper for most of the surviving counts and

transferred them to this Court. Ciralsky v. CIA, 689 F. Supp. 2d
141 (D.D.C. 2010).

Ciralsky worked as an Attorney Advisor in the CIA's Office
of General Counsel beginning on December 2, 1996.[1]  The position,
based in Langley, Virginia, required a top secret security
clearance, which Ciralsky had obtained during a previous job at
the Department of Defense.  The CIA reinvestigated Ciralsky's
security clearance, and on August 19, 1997, Ciralsky failed a
polygraph examination.  After interviewing Ciralsky and
conducting a second polygraph examination, the CIA began the
process of revoking his security clearance and on October 20,
1997 placed Ciralsky on administrative leave.  On November 21,
1997, after hearing arguments from Ciralsky, a CIA Employment
Review Panel recommended revocation of his security clearance and
termination of his employment.  The panel reconsidered the matter
on March 6, 1998, but maintained its recommendation.  On July 2,
1998, the CIA revoked Ciralsky's security clearance.  After
Ciralsky exhausted his appeals, the CIA terminated his employment
on December 13, 1999.

Ciralsky filed his initial Complaint on July 19, 2000.
Defendants filed a motion to strike the complaint, which was
granted but with leave to amend.  Ciralsky filed an amended

_____

[1]The Court adopts the factual background as set forth in the
District of Columbia court's opinion.

2

complaint, which was stricken again, this time without leave to
amend. Ciralsky appealed to the United States Court of Appeals
for the D.C. Circuit, which remanded the case to the district
court with instructions to review whether Ciralsky should be
permitted to amend. The district court allowed Ciralsky to file
his Second Amended Complaint, which alleges the following causes
of action: (1) Discrimination and retaliation in violation of
Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 et
seq. (Claims VII and VIII); (2) Breach of Plaintiff's employment
contract by the CIA (Claim XIX); (3) Improper disclosure of three
records in violation of Section (b) of the Privacy Act, 5 U.S.C.
§ 552a (Claim IX); (4) Various improprieties in the stewardship
of federal agency records under Section (e) of the Privacy Act
(Claims X - XVI); and (5) Various constitutional torts (under
Bivens v. Six Unnamed Agents of the Fed. Bureau of Narcotics, 403
U.S. 388 (1971)), conspiracy to violate civil rights under 42
U.S.C. §§ 1985-1986, and unlawful surveillance under the Foreign
Intelligence Surveillance Act ("FISA"), 50 U.S.C. §§ 1801, et
seq. (Claims I - VI and XX).

The District of Columbia court dismissed the Title VII and
breach of contract claims for lack of subject matter jurisdiction
and dismissed some of the information disclosure and Privacy Act
claims but allowed other portions of those claims to go to

3

discovery, which still is in progress.[2]  The Court also found
that venue was improper for the claims under Bivens, §§
1985-1986, and FISA (Claims I-VI and XX) and transferred those
claims to the Eastern District of Virginia.

Most of the claims before this Court arise under Bivens,
which allows plaintiffs to seek damages from federal officials
for violations of important constitutional rights.[3]  The specific
Bivens claims before this Court allege violations of the Fifth
Amendment's procedural and substantive due process protections
(Claims II, V, and VI); the First Amendment's Free Exercise
Clause and Fifth Amendment's Equal Protection Clause (Claims I
and III); and the Fourth Amendment's protection against
unreasonable search and seizure (Claim IV); as well as a related
claim of a violation of FISA (Claim IV) and conspiracy in
violation of §§ 1985-1986 (Claim XX).

Defendants have moved to dismiss these claims under Fed. R.
Civ. P. 12(b)(1) for lack of subject matter jurisdiction and Fed.
R. Civ. P. 12(b)(6) for failure to state a claim.

_____

[2]At oral argument, plaintiff's counsel raised many
allegations about anti-Semitic discrimination that were recently
learned in discovery but not raised in the complaint.  It would
be inappropriate for the Court to consider new facts when
deciding a motion to dismiss.  Therefore, the Court will only
consider the facts presented in the Second Amended Complaint.

[3]Although the CIA remains listed as a defendant in the
caption of the civil action, a plaintiff can only bring Bivens
claims against individual officials, not government agencies.

4

## II. Discussion

### A.    Standard of review

In a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, a defendant may "contend that the complaint fails to allege facts upon which subject matter jurisdiction may be based" or "argue that the jurisdictional facts alleged in the complaint are untrue." Guardado v. United States, 1:10cv151 (JCC), 2010 U.S. Dist. LEXIS 104862, at *5-*6 (E.D. Va. Sept. 30, 2010). When such challenges are made to the court's jurisdiction, a district court may review evidence not contained within the complaint without converting the motion into a motion for summary judgment. See Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982).

Under Fed. R. Civ. P. 12(b)(6), a complaint should not be dismissed "unless it appears certain that [plaintiff] can prove no set of facts that would support his claim and would entitle him to relief." Smith v. Sydnor, 184 F.3d 356, 361 (4th Cir. 1999). The Court must accept all of the complaint's well-pleaded allegations and view them in a light most favorable to the plaintiff. Smith, 1184 F.3d at 361. This does not apply to legal conclusions but only to facts. Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). In addition, "if the well-pled facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged- but it has not 'show[n]'-

5

that the pleader is entitled to relief." Id. at 1950. "Factual allegations must be enough to raise a right of relief above the speculative level, on the assumption that all of the allegations in the complaint are true." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554 (2007).

B.    Subject matter jurisdiction

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994). Defendants argue that the Court does not have subject matter jurisdiction over this civil action because the Supreme Court in Department of Navy v. Egan, 484 U.S. 518 (1988), held that security clearance decisions are committed to the sole discretion of the executive branch. See Mem. in Supp. of Defs.' Renewed Mot. to Dismiss at 7.

In Egan, the Supreme Court stated that

[t]he President, after all, is the 'Commander in Chief of the Army and Navy of the United States.' U.S. Const., Art. II, § 2. His authority to classify and control access to information bearing on national security and to determine whether an individual is sufficiently trustworthy to occupy a position in the Executive Branch that will give that person access to such information flows primarily from this constitutional investment of power in the President and exists quite apart from any explicit congressional grant.

Id. at 527. The Fourth Circuit has interpreted Egan as a broad restriction on subject matter jurisdiction in security clearance

6

disputes, finding that "unless Congress specifically has provided

otherwise, the courts will not intrude upon the President's

authority to grant or deny access to national security

information." Guillot v. Garrett, 970 F.2d 1320, 1324 (4th Cir.

1992) (internal quotations marks omitted) (holding that the Court

does not have jurisdiction to decide whether the denial of a

security clearance violated the Rehabilitation Act).[4]

    Ciralsky criticizes Egan's holding but does not explain how

his claims overcome this binding Supreme Court precedent.  See

Pl.'s Opp. to Def.'s Renewed Mot. to Dismiss ("Opp.") at 10-11.

There are very few areas where the executive branch's actions are

not subject to any form of judicial review.  See Youngstown Sheet

& Tube Co. v. Sawyer, 343 U.S. 579 (1952). Indeed, Ciralsky

raises legitimate concerns about granting the executive such

unilateral authority; however, as the case law in this Circuit

and the Supreme Court make clear, the granting, denial, or

revocation of a security clearance is a sui generis act over

which the federal courts have no jurisdiction absent

congressional directive.  The unique nature of classified

information has caused the courts to carve this narrow yet

_____

    [4]Although the Fourth Circuit has found that Egan limits
courts' subject matter jurisdiction, other circuits have found
that Egan requires dismissal of challenges to security clearance
decisions under Fed. R. Civ. P. 12(b)(6).  See, e.g., El-Ganayni
v. United States Department of Energy, 591 F.3d 176 (3d Cir.
2010).  Mindful of this other view of Egan, defendants' arguments
also will be addressed under 12(b)(6).

unambiguous exception to judicial review. Ciralsky has not
overcome the clear constitutional rule set forth in Egan, as
demonstrated by his inability to cite a single case in which a
court reviewed the merits of a security clearance decision and
found for the plaintiff.

    To avoid Egan, Ciralsky's counsel at oral argument stated
that the claims arise not from the revocation of his security
clearance but from the constitutional violations that led to the
revocation. This distinction is illusory. All of Ciralsky's
claims and damages relate to the same act: the revocation of his
security clearance and subsequent termination. As the District
of Columbia court found when it dismissed Ciralsky's Title VII
claim for lack of subject matter jurisdiction, "the CIA's
decisions on his security clearance and termination cannot be
viewed as unrelated events." Ciralsky v. CIA, 689 F. Supp. 2d
141, 150 (D.D.C. 2010). That conclusion is consistent with
Becerra v. Dalton, 94 F.3d 145 (4th Cir. 1996), in which the
plaintiff attempted to avoid Egan by challenging the instigation
of the investigation into his security clearance as a form of
retaliation. The Fourth Circuit held that "the distinction
between the initiation of a security investigation and the denial
of a security clearance is a distinction without a difference. .
. .[I]f permitted to review the initial stage of a security
clearance determination to ascertain whether it was a retaliatory

8

act, the court would be required to review the very issues that the Supreme Court has held are non-reviewable." Id. at 149.

Therefore, the only way this Court could have jurisdiction over this dispute is if Congress expressly granted judicial review of security clearance decisions based on invidious discrimination. However, Ciralsky has failed to identify any such congressional directive. For these reasons, all of Ciralsky's claims will be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

C.   Failure to state a claim

Even if the Court had subject matter jurisdiction, all of Ciralsky's claims would fail under Fed. R. Civ. P. 12(b)(6) because the Second Amended Complaint does not meet the pleading standards required by Iqbal and Twombly.

1.   Bivens claims generally

As defendants correctly argue, Bivens creates a right of action against individual federal officials in their personal capacities for violations of clearly established constitutional rights. See Reply Mem. in Supp. of the Defs.' Mot. to Dismiss at 1-2. But other than a vague claim about former Director of Central Intelligence George Tenet, the Second Amended Complaint fails to identify any specific actions of individual defendants, instead stating that its allegations are "against each and every Defendant, jointly and severally," Second Am. Compl. at ¶ 23, and

9

referring to alleged wrongdoings of the CIA.  See, e.g., Second
Am. Compl. at ¶ 40 ("Defendant CIA subjected Ciralsky to
[counterintelligence] and security investigation without
providing him with due process . . . and thus denied Ciralsky a
chance to clear his name.").  Ciralsky cannot bring Bivens claims
against the agency.  Only the actions of individual defendants
can be the basis of Bivens claims.

## 2.    Bivens claim: Fifth Amendment Due Process (Claims II, V, and VI)

Ciralsky claims that the defendants violated his due process
rights by denying him a security clearance.  Specifically,
Ciralsky argues that the CIA violated his substantive due process
rights by subjecting him to coercive polygraph tests and other
improper investigative techniques,  Second Am. Compl. at ¶¶ 36-
39, and  violated his procedural due process rights by subjecting
him to coercive interviews and failing to provide him with
adequate hearings and avenues for appeal.  Second Am. Compl. at
¶¶ 25-30, 40.

Defendants respond that the Court should dismiss the
procedural due process claims because the Fourth Circuit held in
Jamil v. Secretary, Dep't of Defense, 910 F.2d 1203 (4th Cir.
1990) that the plaintiff "did not have a property or liberty
interest in his security clearance, so he had no constitutional
rights to procedural due process in connection with its
revocation."  Id. at 1207, n.5.

Ciralsky's Opposition brief does not explain how the due process claims survive this binding precedent, and he fails to demonstrate that he has any property or liberty interest that would trigger procedural due process protections.

Even if Ciralsky had a liberty or property interest in his security clearance, he fails to allege sufficiently that the CIA failed to meet its due process obligations. In fact, the Second Amended Complaint describes how the CIA provided numerous avenues to appeal the decision to individual officials and a separate review panel, and alleges that Ciralsky took advantage of those review opportunities.

Similarly, Ciralsky fails to sufficiently allege any violations of his substantive due process rights. Ciralsky's substantive due process claim contains broad allegations about the coercive conduct of the polygraph operators, but he does not state how these allegations support a substantive due process claim.

Accordingly, the procedural and substantive due process claims will be dismissed for failure to state a claim.

3.  <u>Bivens Claim: First Amendment's Free Exercise Clause and Fifth Amendment's Equal Protection Clause (Claims I and III)</u>

Ciralsky alleges that the defendants violated his rights to free exercise of religion and equal protection when it revoked his security clearance after describing Ciralsky's statements as

"pro-Israeli baggage" and portraying Ciralsky and his family as "extreme supporters of Israel's hard liners in the Likud party due to his family's gifts to the United Jewish Appeal and Israel Bonds." Second Am. Compl. at ¶¶ 18-21, 24, 31-33.

Defendants argue that these claims should be dismissed because the Civil Service Reform Act, Pub. L. 95-454, 92 Stat. 1111 et seq. (codified, as amended, in various sections of 5 U.S.C.) and Title VII are the exclusive remedies for federal employees' workplace discrimination lawsuits and that the statutes bar Bivens discrimination suits by federal employees. See Mem. in Supp. of Defs.' Renewed Mot. to Dismiss at 11-16 (citing Brown v. General Services Admin., 425 U.S. 820 (1976); Zimbelman v. Savage, 228 F.3d 367 (4th Cir. 2000); Harding v. U.S. Postal Serv., 802 F.2d 766 (4th Cir. 1986)).

In his Opposition brief, Ciralsky does not dispute the defendants' view of the law, but describes the law as a "Catch-22 situation." Opp. at 13. Although Ciralsky presents many arguments as to why this rule is unfair, he offers no binding authority to support his arguments. Ciralsky has already challenged the revocation of his security clearance under Title VII in the District of Columbia, which dismissed that claim; he cannot use a Bivens action to receive a second chance at his failed Title VII claim.

Indeed, allowing this claim would require this Court to

12

broaden the scope of Bivens, which courts are reluctant to do. Bivens creates an implied right of action for damages against federal officials who violate specific constitutional rights.  In Bivens, the Supreme Court allowed a plaintiff to sue government officials for money damages for violating the Fourth Amendment, and the Supreme Court has extended the remedy only to employment discrimination due process claims, Davis v. Passman, 442 U.S. 228 (1979), and Eighth Amendment challenges to prison official conduct, Carlson v. Green, 446 U.S. 14 (1980).  The Fourth Circuit recognized the limited reach of Bivens when it declined to extend Bivens to an Eighth Amendment claim against employees of a privately operated prison.  Holly v. Scott, 434 F.3d 287, 290 (4th Cir. 2006) (holding that "[t]he Court has therefore on multiple occasions declined to extend Bivens because Congress is in a better position to decide whether or not the public interest would be served by the creation of new substantive legal liability.") (internal quotation marks omitted).  Ciralsky has not cited any precedent that creates a Bivens action for free exercise or equal protection claims.

Even if Ciralsky could bring such a Bivens action, he does not allege facts that make out a constitutional violation. Ciralsky alleges that the CIA revoked his security clearance because officials saw him as overly sympathetic to Israel.  If true, the CIA's actions were within its broad discretion for

13

granting and denying access to national security information. As
the Supreme Court held in Egan, a security clearance decision "is
only an attempt to predict [a person's] possible future behavior
and to assess whether, under compulsion of circumstances or for
other reasons, he might compromise sensitive information. It may
be based, to be sure, upon past or present conduct, but it also
may be based upon concerns completely unrelated to conduct, such
as having close relatives residing in a country hostile to the
United States." 484 U.S. 528-29. Egan provides great discretion
to the executive branch in revoking a security clearance,
particularly when there are concerns that the employee is loyal
to another government or foreign power.

The Third Circuit recently dismissed a similar free exercise
and equal protection challenge to the Department of Energy's
revocation of a scientist's security clearance that stemmed from
his activities with Muslim groups. In El-Ganayni v. United
States Department of Energy, 591 F.3d 176 (3d Cir. 2010), the
Third Circuit found that Egan presents an "insuperable bar to
relief" and that the Secretary of Energy "simply cannot be
ordered to justify his decisions in this area, nor can his
justifications be subjected to weighing and second-guessing by a
'nonexpert outside body' such as a factfinder in a federal
court." Id. at 185. Similarly, Ciralsky alleges that the CIA
denied him access to classified information because it was

14

concerned about his loyalty to a foreign government. Such action is within the CIA's broad authority over classified information. Therefore, the free exercise and equal protection claims will be dismissed for failure to state a viable claim.

### 4. Bivens claim: Fourth Amendment and FISA violations (Claim IV)

Ciralsky claims that the government's search of his computer, which produced evidence that led to the security clearance revocation, violated the Fourth Amendment and FISA. Without stating which officials were involved, Ciralsky alleges that the CIA "provided Ciralsky with a laptop computer" and monitored communications from that computer. Second Am. Compl. at ¶¶ 34-35.

Defendants argue that the Fourth Amendment and FISA claims are "entirely conclusory and fail to state a plausible claim for relief." Mem. in Supp. of Renewed Mot. to Dismiss at 28. Ciralsky's Opposition brief merely states that the allegations "are sufficient to plead the cause of action," Opp. at 23, but it does not explain how the complaint satisfies Iqbal and Twombly.

Defendants are correct that the Fourth Amendment and FISA claims are far too general and do not satisfy civil pleading standards. Ciralsky has not alleged anything other than broad, conclusory statements about a search conducted by unknown officials. An equally important issue, which neither the defendants nor plaintiffs address, is that even if the

allegations were more specific, the Fourth Amendment claim would
not be legally viable. The Supreme Court, in City of Ontario v.
Quon, 130 S. Ct. 2619 (2010), found that a police department did
not violate an employee's Fourth Amendment rights when it
monitored the employee's text messages on a government-issued
pager because "the search was motivated by a legitimate work-
related purpose." Id. at 2633. Ciralsky alleges that the CIA
monitored his employer-provided computer to determine whether to
entrust him with access to national security information. As in
Quon, the CIA search had a legitimate, work-related purpose and
involved a computer that it provided, not Ciralsky's personal
computer. Therefore, Ciralsky does not state a valid Fourth
Amendment claim.

    Nor does Ciralsky state a valid FISA claim. FISA governs
surveillance of "foreign intelligence information" between
"foreign powers" and "agents of foreign powers." Ciralsky does
not allege that any of the communications constituted foreign
intelligence information, nor does he allege that the
communications were between foreign powers or their agents.
Ciralsky merely alleges that "[d]efendant's conduct also
violated" FISA. Second Am. Compl. at ¶ 35. Such a conclusory
allegation does not meet Twombly's requirement that the claims
rise above the "speculative" level to survive a motion to
dismiss. 550 U.S. at 589.

Accordingly, Ciralsky's Fourth Amendment and FISA claims will be dismissed for failure to state a claim.

5. Conspiracy in violation of §§ 1985-1986 (Claim XX)

Ciralsky alleges that CIA officials conspired to violate his civil rights by subjecting him to discriminatory investigations, harassment, interrogations, searches, and disciplinary proceedings. These actions, Ciralsky alleges, violated 42 U.S.C. §§ 1985-1986. Second Am. Compl. at ¶¶ 71-75.

Section 1985 prohibits conspiracies to prevent a person from discharging public duties or "for the purpose of depriving, either directly or indirectly," a person of his constitutional rights or privileges. The Fourth Circuit has held that to state a claim under Section 1985, a plaintiff must demonstrate "an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights." Simmons v. Poe, 47 F.3d 1370, 1377 (4th Cir. 1995) (quoting Caldeira v. County of Kauai, 866 F.2d 1175, 1181 (9th Cir. 1989)). Section 1986 creates a cause of action against a person who knows of a Section 1985 conspiracy but fails to prevent it.

Defendants argue that Ciralsky fails to state a viable Section 1985 claim because he fails to provide any "concrete supporting facts" that show an agreement to violate Ciralsky's constitutional rights. See Mem. in Supp. of Renewed Mot. to Dismiss at 24. The defendants are correct. The Second Amended

17

Complaint does not sufficiently allege a meeting of the minds, and does not even identify which of the eight defendants conspired. Instead, it merely alleges that "defendants" conspired to deprive Ciralsky of his civil rights and then repeats the general allegations of earlier claims. This is the sort of conclusory allegation that Iqbal prohibits.

In his Opposition brief, Ciralsky incorrectly argues that he only needs to state the elements of conspiracy and "the nature of the actions Plaintiff believes the Defendants took and why." Opp. at 22. Under Iqbal, the plaintiff must plead more than the elements of the cause of action. The plaintiff must also allege at least some facts that support a plausible claim. Because Ciralsky provides no details of the alleged conspiracy, the Section 1985 and 1986 claim will be dismissed.

D.    Qualified Immunity

Defendants argue that they are entitled to qualified immunity for the Bivens claims because Ciralsky does not adequately allege that they were personally involved in unlawful conduct that violated a known constitutional right. See Mem. in Supp. of Renewed Mot. to Dismiss at 17-22.

Qualified immunity protects government officials whose conduct does not violate "clearly established . . . constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223 (2009). In Egan, the

Supreme Court held that "no one has a 'right' to a security clearance." 484 U.S. at 528. Because there is not a clearly established right to a security clearance, qualified immunity shields the individual defendants from the Bivens claims.

Moreover, Ciralsky does not sufficiently allege a discriminatory purpose for any of the defendants. Instead, he generally states that "all allegations in this claim about Defendants' conduct are alleged against each and every Defendant, jointly and severally, individually and acting with their respective official capacities as federal officers and federal agencies." Second Am. Compl. at ¶ 23. Such broad allegations are the "threadbare" type explicitly prohibited by Iqbal.

In his Opposition brief, Ciralsky does not present any compelling arguments as to why qualified immunity does not apply, and he fails to point to any specific violations of clearly established constitutional rights, by any specific defendants. Instead, without citing any Fourth Circuit authority to support his position, plaintiff makes the bold claim that the Court cannot grant a motion to dismiss based on qualified immunity. See Opp. at 14. Accordingly, the Bivens claims would also have to be dismissed because the defendants are entitled to qualified immunity.

E.    Statute of limitations

Lastly, defendants argue that Ciralsky's claims are time

19

barred. <u>See</u> Mem. in Supp. of Renewed Mot. to Dismiss at 22-23, 25-26, and 29-30. A federal court should apply the state's personal injury statute of limitations to <u>Bivens</u> claims. <u>Reinbold v. Evers</u>, 187 F.3d 348, 358 n.10 (4th Cir. 1999). Virginia's two-year statute of limitations for personal injury, Va. Code. 8.01-243(A), therefore applies to all the <u>Bivens</u> claims. Similarly, the two-year statute of limitations for personal injury applies to the Section 1985 claim. <u>See Johnson v. Pep Boys</u>, No. 2:02CV381, 2002 WL 32366165, at *6 (E.D. Va. Oct. 23, 2002). Section 1986 contains a one-year statute of limitations.

Ciralsky filed the original complaint in the District of Columbia on July 19, 2000. Therefore, this lawsuit can only challenge alleged wrongdoings that occurred after July 19, 1998. Ciralsky argues that "the dates of most of the various events leading to the termination are not stated" in the Second Amended Complaint, so dismissal is inappropriate. Opp. at 20. To the contrary, the Second Amended Complaint states that the CIA had already completed its reinvestigation and revoked Ciralsky's security clearance well before July 19, 1998. The action that is at the center of Ciralsky's complaint – the revocation of his security clearance – actually occurred on July 2, 1998. Therefore, Ciralsky's <u>Bivens</u> and Section 1985 and 1986 claims are

time-barred.[5]

## IV. Conclusion

For the reasons stated above, defendant's Motion to Dismiss [Dkt. No. 77] will be granted as to all counts, by an Order to be issued with this Memorandum Opinion.

Entered this _15th_ day of November, 2010.


Alexandria, Virginia

_/s/ Jmß_
Leonie M. Brinkema
United States District Judge

_____

[5]Defendants also argue that the FISA claim is time-barred. Neither the FISA statute nor Fourth Circuit case law identifies a clear statute of limitations. Because the FISA claim will be dismissed for lack of subject matter jurisdiction and failure to state a claim, it is unnecessary to further consider the statute of limitations argument.